IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

**Criminal No.** 19-541 (FAB)

DONALD KEITH ELLISON [2],

**Defendant.**

OPINION AND ORDER

BESOSA, District Judge.

Defendant Donald Keith Ellison ("Ellison") moves to compel the government to produce additional items of discovery. (Docket Nos. 147, 175.) As set forth below, Ellison's motions are **DENIED**.

I.   **Background**

For these motions, only a rough sketch of the charges is necessary.[1] In short, the government alleges that Ellison, the president of Cobra Acquisitions, LLC ("Cobra"), provided things of value to defendant Ahsha Nateef Tribble ("Tribble"), and that Tribble used her influence as an administrator in the Federal Emergency Management Agency ("FEMA") to assist Cobra in obtaining favorable contracts, contractual terms, and contractual performance from the Puerto Rico Electric Power Authority

---

[1] A more thorough discussion of the charges in this case can be found in United States v. Tribble, 470 F. Supp. 3d 139, 141–42 (D.P.R. 2020) (Besosa, J.), and United States v. Ellison, 442 F. Supp. 3d 491, 493–94 (D.P.R. 2020) (Besosa, J.).

("PREPA") during recovery efforts after Hurricane María.  (Docket No. 3 at pp. 11-39.)  Ellison and Tribble were both charged with a bribery conspiracy, disaster fraud, and four counts of honest services wire fraud.  Id.  Ellison was also charged with two false statement counts.  Id. at pp. 41-42.

Discovery was provided between October 2019 and February 2020.  United States v. Ellison, 442 F. Supp. 3d 491, 494 (D.P.R. 2020) (Besosa, J.).  It is voluminous.  Id.

## II.  Parties' Positions

### A.  Ellison

Ellison asks the Court to compel discovery of various types of materials.  (Docket No. 147.)

The first type of information sought by Ellison relates to an alleged bribery attempt by Jerome Garffer ("Garffer").  Id. at pp. 3-4.  According to Ellison, Garffer solicited, and Ellison rejected, a bribe from Ellison to end an investigation into Ellison's conduct.  Id. at p. 3.  Ellison argues that materials associated with the attempted bribery are relevant to this proceeding because they demonstrate that Ellison lacked corrupt intent with respect to Tribble and because they may impugn the credibility of PREPA witnesses.  Id.  Ellison wants investigative files, interview reports, cooperation agreements, documents on

factual investigations, and recordings associated with Garffer. Id. at pp. 3-4.

The second type of information sought by Ellison relates to documents held by two federal agencies, FEMA and the Government Accountability Office ("GAO"). Id. at pp. 4-12. Id. Ellison argues that the government must produce these documents pursuant to Federal Rule of Criminal Procedure 16 and Brady v. Maryland, 373 U.S. 83 (1963). (Docket No. 147 at pp. 4-12.)

Ellison gives two reasons why FEMA documents should be produced. Id. at pp. 7-9. His first reason is based on organizational structure. Ellison asserts that the Department of Homeland Security ("DHS") led the investigation in this case, and notes that FEMA is part of DHS. Id. Ellison's second reason is based on actions by FEMA and its officials. Ellison argues that FEMA participated in the investigation of this case because thirty-two FEMA officials were interviewed, FEMA attorneys provided information and advice in interviews, FEMA "assisted in coordination in support of the investigation," and documents were collected from FEMA employees. Id. Those facts, Ellison contends, demonstrate that the government exercises control over the documents held by FEMA. Id.

Ellison bolsters his argument for documents from FEMA in a supplemental motion. (Docket No. 175.) In the supplemental

motion, Ellison points to documents he has obtained in another proceeding.  Id.  Ellison notes that one document shows a member of the U.S. Department of Homeland Security Office of Inspector General ("DHS-OIG") requesting a large amount of documents from FEMA.  Id. at p. 2 (discussing id., Ex. A).  Ellison also notes that another document shows that, before FBI investigators and interviewers went to Puerto Rico to engage with FEMA, an FBI agent received help from FEMA employees in coordinating the trip.  Id. (discussing id., Ex. B).  Ellison argues that two other documents produced by FEMA in the other proceeding are exculpatory with respect to the charges in this case and should have been produced in this case.  Id. at pp. 3-4 (discussing id., Exs. C-D).

Ellison wants documents held by GAO because he believes they "go to the essence of [his] defense." (Docket No. 147 at p. 10.)  Ellison notes that GAO has published more than a dozen reports on the federal government's response to Hurricane María; obtained many documents; and interviewed many witnesses, some of whom could be witnesses at trial.  Id.  With respect to matters involved in this case, Ellison states,

> GAO has investigated whether Cobra's rates were reasonable, whether PREPA followed its procedures in awarding the contract to PREPA, whether the US Army Corps of Engineers committed waste and abuse in contracting with the very companies that Cobra was competing with in connection with those companies' work in Puerto Rico, and reconciling the precise amount of work performed by each contractor, the assignments made to each contractor, and the funds paid to each contractor.

Id. Ellison argues that these documents would support his defense because they would show that Cobra's merit was the reason why Tribble advocated for Cobra to receive work, and the reason why Cobra did receive work. Id. at pp. 10-11. Ellison asserts that the government is aware of these reports but has chosen not to obtain them. Id. at p. 11.

Ellison additionally argues that the government should produce documents from PREPA. Id. at p. 12. Ellison concedes that PREPA is not a federal agency. Id. Ellison notes that the government interviewed seventeen witnesses from PREPA and obtained many documents from them. Id. He contends that other indications of PREPA's participation in the government's investigation in this case include PREPA's refusal to pay Cobra until the conclusion of the investigation, and Garffer's expressed knowledge of the investigation through PREPA witnesses. Id. at p. 13. Ellison also alleges that, because PREPA administered a federal grant, FEMA and DHS can request documents from PREPA pertinent to the administration of the grant. Id. at p. 12.

Ellison's next request focuses on documents held by the Unified Command Group ("UCG"). Id. at p. 13. The UCG, according to Ellison, "was involved in daily decision-making relating to the reconstruction of the Puerto Rico power grid following Hurricane María." Id. Its membership, Ellison continues, includes "representatives of multiple government agencies that were involved as investigators and witnesses in this case, including FEMA, [United States Army Corps of Engineers], [Department of Defense], and PREPA." Id. Ellison believes that presentations and notes from UCG meetings are exculpatory and "will show that Cobra completed a large percentage of the work, while only receiving a small percentage of the payments compared with other groups." Id. Ellison states that requests for the notes and presentations pursuant to the Freedom of Information Act ("FOIA") have not been fruitful. Id. at pp. 15–16.

The final category of documents sought by Ellison is a grab bag of financial analyses and contracts relating to Cobra and other contractors involved in restoration efforts after Hurricane María. Id. at p. 17. Ellison believes that these documents will support his argument that Cobra was awarded work because of its merit. Id. at p. 16. He finds it "hard to believe" that the government does not possess the information, and observes that

"[g]overnment agencies involved in the investigation tracked daily progress and payments." Id. at pp. 17–18.

**B.   Government**

The government focuses on the membership of the prosecution team. (Docket No. 154.) According to the government, the team consists of the Criminal Division of the United States Attorney's Office for the District of Puerto Rico ("USAO-DPR"), the Federal Bureau of Investigation ("FBI"), and the DHS-OIG. Id. at p. 3.

The government argues that it has no discovery obligation concerning documents held by FEMA, GAO, PREPA, or UCG because these entities were not part of the prosecution team. Id. The government observes that Ellison does not point to any instance that a member of these agencies "actually interviewed any witnesses during the investigation or took any affirmative independent step to further the investigation." Id. at p. 6. The government states that employees of those agencies did not "participate in the investigation or meet with [USAO-DPR] to seek out or otherwise review evidence obtained in the investigation." Id. The government contends that the fact that the government interviewed witnesses from these entities and obtained documents does not convert them from fact witnesses into members of the prosecution team. Id. at p. 5. The government states that, "On the contrary,

interviews and document requests evidence a lack of a joint prosecutorial effort, since no FEMA official on the prosecution team had independent access to the material." Id. at p. 6.  The government also argues that it would be absurd to consider FEMA a part of the prosecution team merely because it comes within the DHS umbrella. Id. at p. 6.

On the financial analyses and contracts, the government explains that it has produced the evidence that it possesses. Id. at p. 7.  The government states that "[i]t is not clear from Ellison's request where Ellison believes that said information is located" and that the government has no duty to seek the records from FEMA, PREPA, the United States Army Corps of Engineers, or other contractors. Id.

The government also contends that the materials Ellison seeks are irrelevant and not exculpatory to the charges against Ellison. Id. at p. 8.  The government asserts that whether Tribble was justified in taking official action is irrelevant to whether a bribe was completed.  Id. at pp. 8-9.  In addition, the government states that "[w]hether or not Garffer solicited money from Ellison is wholly irrelevant to whether Ellison and Tribble were involved in a bribery conspiracy amongst themselves." Id. at p. 8.

Finally, concerning the Garffer documents, the government states that it has satisfied its discovery obligations pursuant to Rule 16, <u>Brady</u>, and the Jencks Act. <u>Id.</u> at p. 2. The government refers to its previous filings with the Court on the matter. <u>Id.</u>

## III. Legal Standard

"[T]here is no general constitutional right to discovery in a criminal case . . . ." <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977); <u>see</u> <u>Kaley v. United States</u>, 571 U.S. 320, 335 (2014). Discovery in criminal actions is governed by Federal Rules of Criminal Procedure 16 and 26.2; <u>Brady</u>, 373 U.S. 83; <u>Giglio v United States</u>, 405 U.S. 150 (1972); <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995); and the Jencks Act, 18 U.S.C. section 3500.

Federal Rule of Criminal Procedure 16 requires the government to provide documents under certain circumstances. Fed. R. Crim. P. 16(a)(1)(E). Documents and objects within the government's possession, custody or control must be disclosed upon a defendant's request if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." <u>Id.</u>

The government also has a duty to disclose exculpatory and impeachment information pursuant to <u>Brady</u> and <u>Giglio</u>. For the

duty to exist, the material must be in the government's possession
or known to others acting on the government's behalf.  See Kyles,
514 U.S. at 437.  The Court considers this element of Brady and
Giglio to be coextensive with the possession, custody, or control
element of Rule 16.  United States v. Cano, 934 F.3d 1002, 1023
n.16 (9th Cir. 2019).

The scope of the government's "possession, custody, or
control" is bounded.  It does not generally include, for example,
information held by state authorities, foreign governments, or
private parties.  See, e.g., United States v. Hughes, 211 F.3d
676, 688-89 (1st Cir. 2000); United States v. Hall, 171 F.3d 1133,
1145 (8th Cir. 1999); United States v. Hamilton, 107 F.3d 499, 509
n.5 (7th Cir. 1997).  It also does not refer to materials held by
"the 'government' in general."  United States v. Holihan, 236
F. Supp. 2d 255, 260-61 (W.D.N.Y. 2002) (internal quotation marks
omitted) (collecting cases).

Documents held by entities of the federal government or state
governments are within the government's possession, custody, or
control if the entity is "closely connected to the prosecutor."
United States v. Jordan, 316 F.3d 1215, 1249 (11th Cir. 2003); see
United States v. Pickens, Crim. No. 19-314, 2020 WL 1900117, at *3
& n.3 (D. Minn. Apr. 17, 2020).  "To comply with Brady the
individual prosecutor has a duty to find any evidence favorable to

Criminal No. 19-541 (FAB)                                        11

the defendant that was known to those acting on the government's
behalf.  Such persons include other members of the prosecuting
team, including police investigators working for the prosecution."
United States v. Bender, 304 F.3d 161, 164 (1st Cir. 2002)
(citation omitted).  "Whether a state or another federal agency
may be considered part of a federal prosecution team depends upon
the level of involvement between the United States Attorney's
Office and the state or agency which holds the alleged Brady
material." United States v. Ramos-Cartagena, 9 F. Supp. 2d 88, 91
(D.P.R. 1998).  "[T]he inquiry is the extent to which there was a
joint investigation with another agency." Id. (internal quotation
marks omitted).  Factors considered by courts in determining
whether a joint investigation existed include

> (1) whether one agency acts on behalf of or under the
> control of another; (2) the extent to which the two
> agencies are working as a team and are sharing resources;
> and (3) whether the agency charged with possession of
> evidence in the other agency's files had ready access to
> it.

United States v. Ferguson, 478 F. Supp. 2d 220, 238-39 (D. Conn.
2007).  "The 'mere fact that the Government may have requested and
received documents from [another agency] in the course of its
investigation does not convert the investigation into a joint
one.'"  Id. (alteration in original) (quoting United States v.
Finnerty, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006)).

Sometimes, the government may have possession, custody, or control over documents pursuant to an agreement.  For instance, in United States v. Stein, 488 F. Supp. 2d 350, 362 (S.D.N.Y. 2007), the government signed a deferred prosecution agreement with an accounting firm.  The agreement gave the government an "unqualified right," subject to a carve-out for certain privileged documents, "to demand production by [the accounting firm] of any documents it wishes for purposes of [that] case."  Id.  The Stein court held that documents were within the government's possession, custody, and control to the extent the documents did not fall within the privilege carve-out.  Id. at 364.

## IV.  Discussion

Ellison's motion for documents from FEMA, GAO, PREPA, and the UCG fails.  He does not raise a genuine issue that members of these agencies and entities were closely connected to the prosecution in a manner sufficient to trigger discovery obligations pursuant to Rule 16(a)(1)(E) and Brady.

Ellison asserts that members of FEMA and PREPA were interviewed by investigators, provided information and advice in interviews, assisted in coordination, and provided documents to investigators.  (Docket No. 147 at pp. 7–9, 12–13; Docket No. 175 at p. 2.)  Those assertions, however, do not suggest that FEMA, PREPA, or their members acted on behalf of, or under the control

of, investigators, worked as a team with investigators and shared resources, provided ready access to their files, or were otherwise part of the prosecuting team.  Bender, 304 F.3d at 164; Ferguson, 478 F. Supp. 2d at 238-39; Ramos-Cartagena, 9 F. Supp. 2d at 91.

Moreover, Ellison's assertions concerning PREPA's federal grant do not suggest a discovery obligation on the government. Ellison provides nothing but an assertion as to the scope of the grant's provision for requesting documents.  The court cannot evaluate the nature of the authority.  Cf. Stein, 488 F. Supp. 2d at 362 (noting that government conceded it had unqualified right to request documents for purposes of the case before that court). Even if the Court were to accept Ellison's characterization of the provision, the fact that FEMA and DHS can request documents does not mean those documents are within the possession, custody, or control of the prosecution here.  Ferguson, 478 F. Supp. 2d at 238-39.

With respect to GAO, Ellison merely asserts that the agency conducted its own investigation of Cobra and of recovery efforts after Hurricane María.  (Docket No. 147 at pp. 10-11.)  Where an agency conducts its own independent investigation unrelated to a federal criminal prosecution, courts do not find that prosecutors must obtain documents from the independent investigation and provide them to a defendant.  See United States v. Rodríguez-

Marrero, 390 F.3d 1, 30 (1st Cir. 2004) (noting absence of evidence that the government was working with local police); Moreno-Morales v. United States, 334 F.3d 140, 146 (1st Cir. 2003) (holding that federal prosecutors did not have an obligation to learn of materials in an independent investigation conducted by the Puerto Rico Senate, even if hearings of that investigation affected the prosecutors' investigatory decisions).

Similarly, Ellison asserts no connection between UCG and the investigators in this case.   (Docket No. 147 at pp. 13–15.) Accordingly, his motion is insufficient to grant his requested relief.   See United States v. Casas, 356 F.3d 104, 116 (1st Cir. 2004) (noting that prosecutors are not presumed to possess the knowledge of a person in another agency not under their supervision).  Ellison's FOIA requests may have proven unfruitful, (Docket No. 147 at pp. 15–16,) but the government is not the defense's FOIA agent, United States v. Salyer, 271 F.R.D. 148, 156 (E.D. Cal. 2010).

The request for a grab bag of financial analyses and contracts fails too.  Ellison's motion does not show that these documents are within the possession, control, or custody of the government. Bender, 304 F.3d at 164; Ferguson, 478 F. Supp. 2d at 238–39; Ramos-Cartagena, 9 F. Supp. 2d at 91.

Criminal No. 19-541 (FAB)                                          15

        Finally, Ellison's request for documents related to Garffer

is addressed in a separate decision issued today.

**V.   Conclusion**

        For the reasons set forth above, Ellison's motions, (Docket

Nos. 147, 175,) are **DENIED**.

        **IT IS SO ORDERED.**

San Juan, Puerto Rico, March 18, 2021.


                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE